UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| KAITLYN P. PRUITT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 3:20-cv-750-NJR |
| | ) |
| K & B TRANSPORTATION, INC., and | ) |
| GERALD W. BOUTWELL, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

COMES NOW Plaintiff, through counsel, and respectfully requests that this Court deny the Motion to Compel filed jointly by Defendants K & B Transportation, Inc. ("K & B") and Gerald Boutwell ("Boutwell") (collectively, "Defendants") [Doc. 94], for the following reasons:

**Tax Records**

Defendants' First RFP # 5 seeks "[a]ny and all W-2 forms and income tax returns filed by or on behalf of the plaintiff for the past five (5) years." In response to this request, Plaintiff stated:

> RESPONSE: Objection. Plaintiff objects to producing complete tax returns, as the burden and intrusion upon Plaintiff's privacy outweighs any benefit Defendant would gain by obtaining the complete tax return. Any information regarding employment income can clearly be obtained through less intrusive means. A complete tax return would show Plaintiff's net worth, which is completely irrelevant and immaterial.

*See* Plaintiff's Obj. and Resp. to Defs' First RFPs, at # 5. [Doc. 94-1, p. 2]. However, parties subsequently met and conferred on March 24, 2021, and pursuant to that discussion, Plaintiff agreed to produce or execute an authorization for the tax returns so long as they were kept confidential pursuant to parties' proposed protective order. Said protective order was entered into on April 2, 2021. [Doc. 26].  Thereafter, on July 14, 2021, Plaintiff provided to Defendants an executed authorization for Defendants to obtain copies of Plaintiff's tax records for the years 2014-2020.  If

1

there was any defect with the authorization or issue obtaining the records, Defendants never informed Plaintiff thereof. Indeed, up until the time Defendants filed their Motion to Compel, Plaintiff was under the impression that this matter had long since been resolved. As such, any fault regarding this matter lies with Defendants and, had Defendants complied with the requirement of Rule 37(a) to attempt to resolve this dispute in good faith before filing their motion, they would have known this. Accordingly, their Motion to Compel regarding Defendants' First RFP # 5 must be denied.

### Employment Records

According to Defendants' motion, Defendants' First RFP # 13 "seeks an authorization whereby Defendants may obtain Plaintiff's employment records[.]" [Doc. 94, p. 3 ¶ 9]. However, the actual text of RFP # 13 is far broader than that. To put Plaintiff's objection to RFP # 13 into context, the request and the response are set out in full as follows:

> 13.   Please execute and return the attached authorizations.
>
> RESPONSE: Plaintiff objects to signing the authorization attached to this request, because it is not reasonably calculated to lead to the discovery of admissible evidence in that it allows access to records of injuries to body parts that are not placed in issue in the pleadings which are protected by patient-physician privilege. It is overbroad as to timeframe in that it is not limited by dates of medical treatment and provides access to remote information from Plaintiff's entire life. Subject to objections and without waiving same, Plaintiff provides limited authorizations for each provider seen for treatment as a result of the incident that is the subject of this case.

*See* Plaintiff's Obj. and Resp. to Defs' First RFPs, at # 13. [Doc. 94-1, p. 4]. Further, Defendants' motion fails to attach copies of or so much as mention the fact that the "attached authorizations" consisted of an authorization for release of protected health information and medical records, an authorization for release of employment records, an authorization for release of workers' compensation records, and an and an authorization for release of cell phone records. Moreover, none of the authorizations contained any sort of temporal limitation whatsoever. *See* Exhibit 1, email from HeplerBroom to Goldblatt + Singer, dated 10/19/2020, attaching proposed "Pruitt authorization packet". Perhaps

more egregiously, the medical records authorization would have allowed Defendants to obtain "any and all medical information of any kind involving me [Kaitlyn Pruitt]." *Id.* at p. 3. Now that the Court has been provided the proper context for Plaintiff's objection and response to RFP # 13, it should come as no surprise that Plaintiff's counsel wrote limitations into Defendants' proposed authorizations before executing and returning them.

Beyond a lack of context, Defendants also mischaracterize the scope of the authorizations for release of employment records that Plaintiff provided to them. Defendants claim in their motion that "Plaintiff provided a limited employment records authorization, but the authorization was confined only to payroll records and records showing rate of pay." [Doc. 94, p. 3 ¶ 10]. In actuality, Plaintiff executed an authorization for each of her employers and said authorizations all permitted Defendants to "examine and/or copy any and all records in your possession concerning [Plaintiff's] employment limited to attendance records (absences from work for any reason), payroll records and rate of pay." *See* Exhibit 2, email from Goldblatt + Singer to HeplerBroom, dated 09/14/2021, with attached executed employment authorization forms (redactions added for filing here). The authorizations quite explicitly allow Defendants to obtain records of any work attendance or absence issues, as is relevant to Plaintiff's lost wages claim.

There is one final matter worth mentioning to the Court regarding the employment record authorizations; namely, it has been nearly a year since defense counsel has said a word about the purported insufficiency of the authorization forms. Once again, had Defendants attempted to reach out to Plaintiff's counsel before filing their motion to compel, Plaintiff's counsel would have informed them of their misreading of the authorizations (i.e., that the forms do, indeed, permit disclosure of records pertaining to Plaintiff's attendance at and "absences from work for any reason"). Defendant's failure to meet and confer before filing their motion is a violation of Rule 37(a) and this Court's Case Management Procedures regarding Discovery Disputes. Therefore, the Motion to Compel as to Defendants' First RFP #13 must be denied on both procedural and substantive grounds.

**Social Media Evidence**

K & B's Supplemental RFP # 3 seeks:

> 3. Copies of any content from the date of the incident, to the present, including but not limited to posts, photographs, videos, and/or messages, on the Plaintiff's Facebook, Twitter, Instagram, Snapchat, Myspace, Soundcloud, LinkedIn, Google+, Tumblr, Pinterest, YouTube, Vine, WhatsApp, Medium, or any other social media account regarding or evidencing:
>
> (a) Plaintiff's alleged injuries;
>
> (b) Plaintiff's physical condition before-and-after the subject incident, including but not limited to all photographs of Plaintiff from 5 years before the subject accident to present;
>
> (c) Plaintiff's mental or emotional state before-and-after the accident;
>
> (d) The activities in which Plaintiff is and was able to participate in before-and-after the accident;
>
> (e) The facts and circumstances of the accident itself; and,
>
> (f) The medications Plaintiff took as a result of the accident.

*See* Plt's Obj. and Resps. to K & B's Suppl. RFPs, at # 3. [Doc. 94-2, p. 3]. Plaintiff initially objected to producing this information on several grounds, including that the request "is not limited to the scope of the pleadings of this case." *Id.* After parties met and conferred on this and numerous other discovery matters on September 20, 2021, Plaintiff's public Facebook **and Instagram** posts were produced to Defendants on October 20, 2021. *See* Plt's Obj. and Resp. to K & B's Suppl. RFPs, at # 3. [Doc. 94-3, pp. 2-3].

Defendants contend that "there is simply no basis for Plaintiff's refusal to provide posts about the accident and her injuries that she shared with others in a so-called 'private' post or message." [Doc. 94, p. 5 ¶ 17]. However, in each of the cases cited by Defendants as purported support for their position, the court found that the requested discovery was properly objected to as overbroad fishing attempts by the requesting party. First, Defendants quote *Tompkins v. Detroit Metropolitan Airport* for the idea that: "material posted on a "private" Facebook page, that is accessible to a selected group

4

of recipients but not available for viewing by the general public, is generally not privileged, nor is it protected by common law or civil law notions of privacy." 278 F.R.D. 387, 388 (E.D. Mich. 2012). Yet, in the immediately following sentences, the judge in *Tompkins* states:

> Nevertheless, the **Defendant does not have a generalized right to rummage at will through information that Plaintiff has limited from public view**. Rather, consistent with Rule 26(b) and with the cases cited by both Plaintiff and Defendant, **there must be a threshold showing that the requested information is reasonably calculated to lead to the discovery of admissible evidence**. Otherwise, the Defendant would be allowed to engage in the proverbial fishing expedition, in the hope that there might be something of relevance in Plaintiff's Facebook account.

*Id.* (emphases added).  The defendant in *Tompkins* at least claimed that some of the plaintiff's public posts, showing plaintiff holding a small dog and posing for pictures at a birthday party, were evidence that the plaintiff was exaggerating her injuries.  *Id.* at 388-89.  The judge found that the public posts were "rather mundane and minimally exertional activit[ies]" and thus held that "based on what has been provided to this Court, Defendant has not made a sufficient predicate showing that the material it seeks is reasonably calculated to lead to the discovery of admissible evidence." *Id.* at 389.

Similarly, in *Appler v. Mead Johnson & Co., LLC*, the judge only required the plaintiff to download and produce specific categories of her Facebook data relevant to her alleged injuries. No. 3:14–cv–166–RLY–WGH, 2015 WL 5615038, at *4 (S.D. Ind. Sept. 24, 2015) ("Since the entire download and production of Plaintiff's Facebook profile would include a lot of information not available to the public . . . consideration of her privacy interests becomes relevant.")

Next, Defendants cite *Chiles v. Novartis Pharmaceuticals Corp.*, Case No. 3:06–cv–96–J–25JBT, 2012 WL 12904994, at *1 (M.D. Fla. Mar. 12, 2012) for the quote that "[g]enerally, SNS (social networking sites) content is neither privileged nor protected by any right of privacy." However, the **immediately preceding sentence** states that "[t]he Court agrees with Plaintiff that Defendant has not provided a sufficient basis for its request."  Thus, the court granted the defendant's motion to compel "only to the extent that Plaintiff will be ordered to produce any subject documents containing

5

depictions of Mr. Chiles eating" because Chiles had alleged he was suffering from osteonecrosis (death of bone cells) of the jaw. It denied the motion to compel "in all other respects" as a fishing expedition. Likewise, in *Howell v. Buckeye Ranch,* Case No. 2:11–cv–1014, 2012 WL 5265170, at *1 (S.D. Ohio Oct. 1, 2012) the court concluded that "[h]ere defendants' discovery request is overbroad."

Finally, in *Rhone v. Schneider National Carriers, Inc.*, the judge granted *in part* defendant's motion to compel production of documents **after** the defendant made a showing that "Schneider's independent examination [of plaintiff's public social media posts] has already uncovered relevant information; specifically, comments and photos regarding physical activity such as dancing [by plaintiff]" in a case where the plaintiff had alleged severe physical injuries to her neck, back and spine that were permanent and progressive. Case No. 4:15-cv-01096-NCC, 2016 WL 1594453, at *3 (E.D. Mo. Apr. 21, 2016). The court agreed that the nature of the public posts thus established a reasonable basis for defendant to believe that obtaining the plaintiff's private posts would lead to the discovery of admissible evidence relevant to disputing the extent of plaintiff's alleged injuries.

In sum, the ability of a party to obtain private social media posts has been recognized but consistently limited by the courts to only those instances where the requesting party has made a sufficient showing that the scope of the request is reasonably narrowly tailored to the types of information relevant to the allegations put into issue by the pleadings. Here, however, Defendants have been provided with Plaintiff's public posts on Facebook and Instagram.[1] Despite this,

---

[1] Regarding Plaintiff's Snapchat account and Defendants' contention that Snapchat data is downloadable similar to Facebook and Instagram, some context is required. The data that is produced by using Snapchat's "Download My Data" option is produced from Snapchat directly to the account holder as a zip file and spans the entire life of the user's account. There does not appear to be a way to automatically limit the timeframe produced. Moreover, the data is produced in a way that makes it practically impossible to determine what is relevant and what is not. For example, the file containing "Memories" data consists of every image and video the user ever created and the date each was created; however, the only way to actually view the image/video is to click on the download link (i.e., as produced, the only visible information is a date and whether the file is an image or a video; there is no description to aid in identifying what is relevant). *NOTE: Snapchat "Memories" are akin to an unsent draft email; only the author can view it. It is not available to the public or even the user's Snapchat friends.* In contrast, the file containing the user's posted pictures data identifies the sender, whether the posted item is an image or a video, and the time it was sent but does show the actual image/video nor even provide a link to download it. Essentially, all that is obtained from Snapchat is metadata about the posted picture. As for user's chat/text history, the data consists of the actual text and the recipient(s) it was sent to but does not provide the

Defendants present this Court with nothing to demonstrate that the content of Plaintiff's public posts evince conduct inconsistent with the injuries she alleges. Defendants have failed to offer any support for why they should be permitted further invade Plaintiff's privacy. *See Appler,* at *4 (recognizing that the plaintiff's privacy interest must be considered). Therefore, Defendants' Motion to Compel regarding K & B's Supplemental RFP # 3 must be denied.

## Identification Information

Interrogatory # 2 of Boutwell's Supplemental Interrogatories asks that Plaintiff:

> State the name, address, job title, and employer of the person or persons who came to Plaintiff's home after the accident as referenced in Plaintiff's deposition on page 49, lines 12-19. Please also state the date and time of said contact and whether said person(s) were invited to the home before arriving.

*See* Plt's Ans. and Obj. to Boutwell's Suppl. Interrogs., at # 2. [Doc. 94-5, p. 3]. Plaintiff answered this interrogatory: "Unknown." *Id.* The reason for her answer of "Unknown" is simple; neither Plaintiff's counsel nor Plaintiff herself know the answer to this question. So far as Plaintiff's counsel can ascertain, there was no meeting at Plaintiff's house between her and anyone from Goldblatt + Singer or any expert acting on counsel's behalf. At the deposition, Plaintiff could not recall any actual details about this supposed meeting aside from it being at her house. She did not remember who she talked to or the timeframe when the meeting took place. Combined with the fact that Plaintiff's counsel has attempted in good faith to figure out whether any such meeting occurred but still came up emptyhanded, the only possible conclusions are that either Plaintiff was mistaken and there was no meeting at all or Plaintiff met someone she thought was there on behalf of Goldblatt + Singer when in fact said mystery man was not there on anyone's behalf but his own. That may well mean that an

---

date or time the message was sent. It would be extremely burdensome to require Plaintiff to go through all her texts, images/videos and "Memories" to even ascertain which ones might be relevant. Furthermore, whatever slight relevance the Snapchat data may hold is outweighed by the gross violation of Plaintiff's privacy the review of that data would require. Defendants have been provided with so many pages of Plaintiff's Facebook and Instagram data that Plaintiff's counsel had difficulty transmitting it. *See* Plt's Obj. and Resp. to K & B's Suppl. RFPs, at # 3. [Doc. 94-3, p. 3].

unaffiliated individual is out there in the world somewhere with knowledge relevant to this litigation, but there is nothing Plaintiff or Plaintiff's counsel can offer Defendants to help identify him.

The reason Plaintiff's counsel stated at the deposition that he believed it was someone from Goldblatt + Singer is that counsel thought it was possible that, perhaps, someone from his office may have gone to Plaintiff's home. Because an objection is waived if not timely asserted, the only option was to err on the side of caution and then figure it out when counsel returned to the office after the deposition.  As defense counsel is well aware, the obligation to respond truthfully applies equally to testimony at a deposition as it does to an interrogatory answer. Plaintiff's counsel having now investigated the matter, Plaintiff has stated in a sworn answer to Boutwell's Supplemental Interrogatory #2 that she does not know anything about the purported meeting. No secret, no trick, just an offhand mention of a vague memory of a meeting that in all likelihood never happened.

## Retention Formation Information

Interrogatory # 1 of Boutwell's Supplemental Interrogatories asked Plaintiff to:

> State the date, time, and location Plaintiff first contacted or was contacted by Goldblatt & Singer or its agents, including but not limited to, any attorneys or accident investigators. Further state whether the contact was in person, by phone, by video, by email or text, or by some other method of communication, and state who initiated the contact.

*See* Plt's Ans. and Obj. to Boutwell's Suppl. Interrogs., at # 1. [Doc. 94-5, p. 2]. Plaintiff objected to this interrogatory for several reasons, not the least of which being that "[t]he circumstances of when and how Plaintiff sought legal advice and/or accessed the legal system in regard to this case is neither relevant to any party's claim or defense in this case nor reasonably calculated to lead to the discovery of admissible evidence." *Id.* The only explanation Defendants offer on how this information could be relevant (and therefore discoverable) is that this first contact might be the aforementioned mystery meeting. Unfortunately, as thoroughly explained above, there was almost undoubtedly no mystery meeting to begin with. Accordingly, the time and manner in which Plaintiff retained Goldblatt +

Singer to represent her in this matter remains wholly irrelevant to the case, and thus Defendants' Motion to Compel as to Boutwell's Supplemental Interrogatory # 1 must be denied.

### Correspondence Between Plaintiff's Counsel and Gateway Spine

K & B's Second Supplemental RFP # 3 seeks "[a]ny documents, letters, e-mails, or written correspondence of any type exchanged between Plaintiff's counsel and Gateway Spine & Joint relating to treatment of Kaitlyn Pruitt and/or billing for said treatment." On June 8, 2022, in response to this request, Plaintiff produced the medical lien acknowledgment form between Kaitlyn Pruitt and Gateway Spine but otherwise objected "because it is overly broad, unduly burdensome, disproportionate to the needs of the case and not reasonably calculated to lead to the discovery of admissible evidence." *See* Plt's Resp. and Obj. to K & B's Second Suppl. RFP., at # 1. [Doc. 94-6, p. 3].

On August 1, 2022, Defendants served a subpoena duces tecum and Notice to Take Deposition of the Designated Representative of Gateway Spine & Joint LLC ("Gateway Spine"). Gateway Spine retained counsel and, on August 24, 2022, counsel for Defendants and counsel for Gateway Spine reached an agreement regarding the scope of the subpoena and deposition of Gateway Spine's representative. *See* Exhibit 3, Gateway Spine's Motion to Withdraw its Motion for Protective Order, filed in the in the Eastern District of Missouri, Case No. 4:22-mc-00699 ("The parties have resolved the issues raised in Gateway's Motion.").

On September 8, 2022, Defendants filed their Motion to Compel. [Doc. 94]. On September 13, 2022, counsel for Defendants forwarded copies of the documents Gateway Spine produced in response to Defendants' subpoena; and, on September 14, 2022, Defendants took the deposition of Gateway Spine's representative. In light of the recent document production and deposition of Gateway Spine's representative—which occurred subsequent to Defendants' filing of their Motion to Compel—this issue has been rendered moot and, as such, Plaintiff requests that the Court deny it.

**Plaintiff's Notes About Accident and Medical Treatment**

K & B's Third Supplemental Request for Production was served on Plaintiff on July 28, 2022, and included a request that Plaintiff produce "[t]he journal referenced on page 35 of plaintiff's deposition." *See* Plt's Resps. to K & B's Third Suppl. RFPs, at # 2. [Doc. 94-7, p. 1]. Plaintiff answered "[w]ill supplement" because Plaintiff is trying to locate the journal. Plaintiff's deposition was taken back on July 16, 2021. In the year and two months since Plaintiff's deposition, she moved residences and, apparently, is having trouble locating the journal following the move. Plaintiff is continuing to search for the journal but has thus far been unable to find it.

Additionally, it is worth noting once again that Defendants violated Rule 37(a) by failing to meet and confer with Plaintiff's counsel regarding the journal prior to filing their motion. Based on the timestamp of the CM/ECF notification, Defendants filed their Motion to Compel on September 8, 2022, at 3:46 pm. Barely 30 minutes before that, at 3:04 pm, Plaintiff's counsel received an email from counsel for Defendants—in response to Plaintiff's own good faith email regarding deficiencies in Defendants' discovery responses—wherein defense counsel stated: "One other matter, in Plaintiff's Responses to K&B's Third Supplemental Requests to Produce, Plaintiff agreed to produce the journal she referenced at her deposition. However, Plaintiff has not provided that journal. Please supplement as agreed." *See* Exhibit 4, reply email from Adam McGonigle to Daniel Brenner, dated 09/08/2022, at p. 2. Sending an email 30 minutes before filing a motion is hardly a reasonable attempt to resolve differences. As such, this Court should deny Defendants' Motion to Compel regarding K & B's Third Supplemental RFP # 2 as premature.

WHEREFORE, Plaintiff prays this Honorable Court deny Defendants K & B Transportation, Inc. and Gerald Boutwell's Motion to Compel [Doc. 94], and for such other and further relief as this Court deems just and proper under the circumstances.

          **GOLDBLATT + SINGER**

          */s/ Amanda N. Murphy*
          **Amanda N. Murphy #6295289**
          amurphy@stlinjurylaw.com
          **Shaun M. Falvey #6284797**
          sfalvey@stlinjurylaw.com
          **8182 Maryland Ave., Ste. 801**
          **Clayton, MO 63105**
          **(314) 231-4100 Telephone**
          **(314) 241-5078 Facsimile**
          *ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 19th day of September, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF, which served the foregoing on all parties of record.

          */s/ Amanda N. Murphy*

11