UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| KAITLYN P. PRUITT, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   Case No.:    3:20-cv-750-RJD |
| v. | ) |
| | ) |
| K & B TRANSPORTATION, INC., and | ) |
| GERALD W. BOUTWELL, | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANT K&B TRANSPORTATION'S RESPONSE TO
PLAINTIFF'S MOTION TO COMPEL**

COMES NOW Defendant K&B Transportation, through counsel, and for its Response to Plaintiff's Motion to Compel, states as follows:

**Introduction**

1. The parties resolved most of the disputes at issue in Plaintiff's Motion in a meet-and-confer a year ago. Unfortunately, as with her Motion to Compel against Defendant Boutwell, Plaintiff once again attempts to rescind the good faith agreements she made. This should not be allowed. For the reasons that follow, the Court should deny Plaintiff's Motion to Compel.

**Critical Event Reporting Data**

2. Plaintiff seeks critical event data. Although none of her Requests for Production specifically sought critical event data, K&B voluntarily produced critical event data from the date of the accident in its initial Responses to Plaintiff's Requests for Production 13(i) and 14(i).

3. On September 20, 2021, the parties met and conferred about these responses and others. During the meet-and-confer, K&B agreed to produce eight days of critical event data. Afterwards, Plaintiff's counsel sent an e-mail memorializing the agreed terms of the meeting,

confirming, "K&B will provide 8 days of critical event data."*See* Murphy's Sept. 20, 2021 E-mail, ¶ 4(d)(i)(3), attached as *Exhibit A*.

4. Pursuant to the meet-and-confer agreed terms, K&B supplemented its responses to Requests 13(i) and 14(i), and confirmed that it produced any and all critical event data from the data of the accident and eight days prior. *See* K&B's Supplemental Responses to Plaintiff's Requests for Production, Nos. 13(i) and 14(i), attached as *Exhibit B*.

5. In her Motion, Plaintiff notes that the only critical event data K&B has produced is a screenshot of a "CER" search, which shows a search date of the date of the accident. K&B cannot conduct a similar search for the eight days before the accident because it no longer uses the same software. Nevertheless, as Plaintiff noted in her motion, K&B's Safety Director, Matt Tipton, testified that the old software sent an automatic e-mail alert to K&B when a critical event occurred. *See* Plaintiff's Motion to Compel, Doc. 96, p. 9. Plaintiff wrongly suggested that K&B has refused to provide any such e-mail alerts.

6. Defendant fully complied with the parties' agreement to produce critical event data from the eight days before the accident. To be clear, Defendant is not withholding any critical event data from that timeframe. Defendant agrees that any automatic e-mail alerts generated after a critical event would be responsive to Plaintiff's discovery request. The reason it has not produced any such e-mail alerts is very simple: there were none.

7. Defense counsel have explained this to Plaintiff's counsel multiple times. In a June 24, 2022 e-mail, defense counsel confirmed that K&B searched for critical event data for the agreed upon timeframe and did not locate any such information. *See* McGonigle Email to Brenner, June 24, 2022, attached as *Exhibit C*. Later, on September 8, 2022, defense counsel again explained that the reason it had not produced any further critical event data was because there was

no further data to produce. *See* McGonigle E-mail to Brenner, Sept. 8, 2022, attached as *Exhibit D*.

8. In her Motion, Plaintiff now asks the Court to rescind the good faith agreement Plaintiff made to accept eight days of critical event data. She now demands 30 days. That is not how meet-and-confers are supposed to work. Plaintiff argues that during the meet-and-confer, she agreed to accept eight days of data, but "reserved her right to take up Defendant's objections to providing the full time period requested." Doc. 96, Plaintiff's Motion to Compel, at p. 8.

9. Meeting-and-conferring and reaching agreements with opposing counsel, while supposedly "reserving" ones right to later rescind those agreements, is not meeting and conferring in good faith, as Federal Rule 37 and this Court's Case Management Procedures require. It is a bait-and-switch tactic. The purpose of a meet-and-confer is to resolve discovery disputes without court intervention, not to delay the discovery disputes so that the party can later hassle the court to rescind agreements the party had already made.

10. During the course of discovery in this case, both Defendants have honored the agreements they made during the meet-and-confers, even when Plaintiff indicated she would not. When Plaintiff demanded a cell phone authorization from Gerald Boutwell for 30 days of records, for example, notwithstanding Plaintiff's proposal and agreement to accept records from the date of the accident, Boutwell still provided the agreed upon authorization. *See* McGonigle E-mail to Falvey, Sept. 14, 2022, attached as *Exhibit E* (noting that Defendant had agreed to provide a cell phone authorization from the date of the accident and "although plaintiff may seek to renege on that agreement, Boutwell will honor it."). The response from Plaintiff's counsel was telling. He accepted the authorization, used it to subpoena Verizon and notice Verizon's deposition, then filed a Motion to Compel and wrote defense counsel that Boutwell's compliance with the terms of the

meet and confer "absolutely 100% does not resolve our ongoing discovery dispute…" *See* Falvey E-mail to McGonigle, September 13, 2022, attached as *Exhibit F*.

11. In summary, the parties met-and-conferred about critical event data and pursuant to that agreement, Defendant produced all responsive documents regarding critical event data for the eight days before the accident. There is nothing to supplement. Further, Plaintiff should not be allowed to rescind her good faith agreement and to now demand data beyond the eight days the parties agreed upon.

### Plaintiff's Request for Production 26

12. The parties resolved the issues as to (a), (b), (c), and (g) during the September 20, 2021 meet-and-confer and Defendant produced all documents responsive to those requests. Defendant separately addresses its objections to subparts (d), (e), (f), (h), (j), and (k), which the parties did not resolve at the meet-and-confer.

Subparts (a), (b), (c), and (g)

13. Subpart (a) seeks driver log audits; subpart (b) seeks drug and alcohol tests; subpart (c) seeks documents evidencing disciplinary actions, and subpart (g) seeks Boutwell's violations, citations, and warnings. During the parties Sept. 20, 2021 meet-and-confer, K&B agreed to supplement its initial responses to those subsections with any information or documents not already produced responsive to those subsections.

14. K&B has produced all of the log audits, drug and alcohol tests, disciplinary action documents, and all of Boutwell's violations, citations, and warnings, regardless of timeframe. Indeed, Plaintiff extensively questioned both Boutwell and Tipton at their depositions about the years of log audits, and Boutwell's violations, citations, and warnings from throughout his

4

employment with K&B. Those documents were contained within Boutwell's qualification file, which K&B produced at the outset of discovery. There is nothing to supplement.

<u>Subparts (d), (e), (f), (k)</u>

15. K&B objects to Request 26 subparts (d), (e), (f), and (k) which seek "documents of or pertaining to … (d) performance evaluations, (e) complaints/motorist call-ins, (f) near-misses, and (k) other documents used by Defendant to supervise Driver's job performance" because they are vague. Plaintiff does not define or otherwise explain what she means by these phrases and K&B is unclear, for example, what Plaintiff means by a "near-miss." Nevertheless, in an effort to resolve this discovery dispute, K&B can confirm that any documents possibly constituting a "performance evaluation" would be in Boutwell's qualification file, already produced.

<u>Subpart (h)</u>

16. Subpart (h) seeks Boutwell's driver scorecard. K&B objects to this request because it is overbroad in time. Only scorecards obtained *before* the accident would be relevant to Plaintiff's claim that that K&B should not have hired Boutwell, or should not have retained or entrusted a vehicle to him, and thereby caused the accident. To the extent Plaintiff seeks scorecards that K&B obtained before the accident and agrees to limit her request accordingly, K&B will supplement its response with any responsive documents.

<u>Subpart (j)</u>

17. Subpart (j) seeks preventability determinations and the accident reports from any of Boutwell's prior accidents. Defendant objects to this Request because it is irrelevant and violates 49 USC 504(f), which provides.,

> **No part of a report of an accident** occurring in operations of a motor carrier, motor carrier of migrant workers, or motor private carrier and required by the Secretary, and no part of a report of an investigation of the accident made by the

5

> Secretary, **may be admitted into evidence or used in a civil action for damages** related to a matter mentioned in the report or investigation.

49 USC 504(f) (emphasis added).

18. Because an accident report created under 49 USC 504(f) may not be "used in a civil action for damages," the request for the accident report from this accident, which Defendant listed on its privilege log, is not reasonably calculated to lead to the discovery of admissible evidence.

19. In explaining why FMCSR-required accident reports may not be used in civil actions, the Federal Motor Carrier Safety Administration recently explained,

> The crash preventability determinations made under this program are intended only for FMCSA's use in determining whether the program may improve the Agency's prioritization tools. These determinations are made on the basis of information available to FMCSA at the time of the determination and are not appropriate for use by private parties in civil litigation. **These determinations do not establish fault or negligence by any party and are made by persons with no personal knowledge of the crash**.

Federal Register - Vol. 82, No. 143, July 27, 2017 (emphasis added).

20. Because accident reports cannot "used in a civil action for damages," 49 USC 504(f), they are irrelevant and not likely to lead to the discovery of admissible evidence.

21. Moreover, because accident reports – whether concerning the present accident or any prior accidents – "do not establish fault or negligence by any party," *see* Federal Register, Vol. 82, No. 143, July 27, 2017, they are not relevant to Plaintiff's claims for negligent hiring, retention, supervision, and entrustment, and are not reasonably calculated to lead to the discovery of such evidence.

### Request for Derek Cleveland's Deposition

22. Defendant opposes Plaintiff's request for the deposition of K&B employee, Derek Cleveland, because the deadline for Defendants' depositions passed on August 1, 2022, two days before Plaintiff requested the deposition. Plaintiff argues, in turn, that she timely requested

Cleveland's deposition in a June 17, 2022 e-mail to defense counsel before the deposition cutoff. That is not correct.

23. Plaintiff's June 17, 2022 e-mail asked K&B to identify and produce the following individuals for deposition: (a) "the person who was serving as Boutwell's dispatcher on the day of the collision," (b) "the person responsible for hiring and qualifying Boutwell back in early 2017;" and (c) "the individual responsible for safety enforcement at K&B (Derek Cleveland?)." *See* Brenner Email to McGonigle, June 17, 2022, attached as *Exhibit G*.

24. Derek Cleveland did not dispatch Boutwell on the date of the collision. *See* K&B's Second Supplemental Answers to Plaintiff's First Interrogatories, No. 24, attached as *Exhibit H*. Cleveland was not responsible for hiring and qualifying Boutwell, either. He is K&B's CSA and logs director. *See* Matt Tipton's Deposition, 36:4-7, relevant portions attached as *Exhibit I*.

25. With respect to Plaintiff's request for the deposition of "the individual responsible for safety enforcement at K&B," Defendant identified Matt Tipton, K&B's Safety Manager, not Cleveland. *See* Exhibit H.

26. Contrary to the suggestion in Plaintiff's June 17 e-mail, although Cleveland's job is related to some aspects of company safety, Derek Cleveland is not "the individual responsible for safety enforcement at K&B." Rather, as noted, he is the CSA and logs director. Matt Tipton, the individual K&B produced for deposition pursuant to Plaintiff's request, is the Safety Director. *Exhibit I*, 15:4-6.

27. Moreover, because Tipton verified K&B's discovery responses, which addressed matters involving Boutwell's hiring, qualification, supervision, and dispatching, K&B further stated in its supplemental response to Plaintiff's Interrogatory 24, "K&B identifies Matt Tipton,

Safety Manager, as an individual involved in and knowledgeable about the hiring, qualifying, supervising, and dispatching of Gerald Boutwell." *See Exhibit H*.

28. Although Plaintiff had neglected to request any K&B depositions during the entirety of this lawsuit until six weeks before the cut-off, Defendant nonetheless accommodated Plaintiff's request and produced Mr. Tipton for deposition on July 28, 2022.

29. At his deposition, Mr. Tipton testified for nearly five hours about Boutwell's hiring and qualification and K&B's supervision and dispatching of Boutwell. He also spoke at length about Boutwell's logs.

30. At his deposition, Tipton made several brief references to Derek Cleveland, which Plaintiff cites in her Motion. In short, he testified that Cleveland was among the individuals in the logs department who, like Tipton himself, may have knowledge about Boutwell's logs. *Exhibit I*, 107-109.

31. Of course, in Plaintiff's June 17, 2022 e-mail, Plaintiff did not request K&B produce any and all individuals with any information about Boutwell's logs. Indeed, Plaintiff did not specifically request testimony about Boutwell's logs at all. Instead, Plaintiff requested the person responsible for safety enforcement, so K&B produced its Safety Director. *See Exhibit G*.

32. Plaintiff did not even request Derek Cleveland's deposition until August 3, 2022 – two days *after* the deposition cutoff. *See* Milam's Email to Defendants, Aug. 3, 2022, attached as *Exhibit J*. Because the request was not timely, Defendant opposes Plaintiff's demand to produce Cleveland for a deposition.

33. K&B is prejudiced by Plaintiff's untimely request for Cleveland's deposition. Plaintiff's expert disclosure deadline passed on September 1, meaning they could not rely on Cleveland's testimony, and the depositions of Plaintiff's experts are to be completed by October

8

3. If they reviewed Cleveland's testimony after their depositions but before trial, Defendant would not have the opportunity to depose them on that topic due to Plaintiff's failure to timely seek Cleveland's deposition.

34.     Moreover, Defendants' expert disclosure and deposition deadlines are also rapidly approaching. Because Plaintiff did not request Cleveland's deposition until after the deadline for such depositions passed, the Court should deny Plaintiff's Motion.

## Conclusion

The parties fully resolved the bulk of the discovery disputes at issue in Plaintiff's Motion during the meet-and-confer and Defendant complied with the good faith agreements the parties made, even though Plaintiff herself reneged on several of them. For that reason, Plaintiff's Motion should be denied in whole. Moreover, Plaintiff's request for Derek Cleveland's deposition is untimely and her requests for supplements to Defendant's Responses to Request 26 are objectionable for the reasons stated above.

WHEREFORE, Defendant respectfully requests the Court deny Plaintiff's Motion to Compel and for such other and further relief as the Court deems just and proper.

Respectfully Submitted,

HEPLERBROOM LLC

By: */s/ Adam McGonigle*
MICHAEL REDA            #6184782IL
mreda@heplerbroom.com
ADAM S. McGONIGLE       #6315569IL
asm@heplerbroom.com
130 North Main Street
P.O. Box 510
Edwardsville, Illinois 62025
Telephone: (618) 656-0184
Fax: (618) 656-1364
Attorneys for Defendant K&B Transportation

9

**CERTIFICATE OF SERVICE**

   The undersigned certifies that the foregoing was filed via the Court's eFiling System with a copy of the foregoing being served electronically this 23rd day of September, 2022 on:

Shaun M. Falvey
Amanda N. Murphy
Goldblatt & Singer
8182 Maryland Ave., Ste. 801
Clayton, MO 63105
sfalvey@stlinjurylaw.com
amurphy@stlinjurylaw.com
T: 314-231-4100 / F:  314241-5078
*Attorneys for Plaintiff*

               */s/ Adam McGonigle*