IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KAITLYN P. PRUITT,

      Plaintiff,

v.

                              Case No. 20-CV-750–NJR

K&B TRANSPORTATION, INC., and
GERALD W. BOUTWELL,

      Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This case is before the Court on three motions to compel (Docs. 94, 96, 97) and the responses filed in opposition to them (Docs. 99, 104, 105).

### BACKGROUND

This is a motor vehicle accident case alleging negligence, negligence per se, negligent hiring, negligent retention, and negligent supervision against Defendants K&B Transportation, Inc., and Gerald W. Boutwell by Plaintiff Kaitlyn P. Pruitt. The case was filed on July 31, 2020. (Doc. 1). After a series of motions to dismiss, on May 5, 2022, the Court adopted the parties' proposed scheduling and discovery order. (Doc. 69-1). At that time, discovery was to be completed by December 22, 2022. (Doc. 69-1, p. 2).

The parties have worked hard to cooperate during discovery. Initial interrogatories and requests to produce pursuant to Federal Rules of Civil Procedure 33 and 34 were served well before the scheduling order was finalized. (Doc. 69-1). The Court also recognizes that Pruitt's deposition was completed before the Court entered the

scheduling order. (*Id.*). Despite this cooperation, there are numerous discovery disputes. The parties attempted to resolve their discovery disputes several times. For instance, on March 24, 2021, the parties met and conferred. (Doc. 99, p. 1; Doc. 103-2, p. 2). Then on September 20, 2021, "counsel for parties met and conferred via telephone regarding a number of unresolved discovery disputes." (Doc. 96, p. 2).

Unfortunately, a number of discovery disputes remain. As a result, the parties filed these three motions to compel. Due to the detailed nature of the requests, objections, and the motions, the Court will review each of the parties' requests and their responses in turn.

LEGAL STANDARD

This Court has broad discretion in discovery matters, including ruling on motions to compel. *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013). Generally, the parties are permitted to obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. FED. R. CIV. P. 26(b)(1). Considering relevancy, information need not be admissible at trial if discovery seems reasonably calculated to lead to discovery of admissible evidence. *Id.* Regarding discovery, "[p]arties are entitled to a reasonable opportunity to investigate the facts—and no more." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994).

Rule 33 permits parties to serve upon each other interrogatories relating to any matter that may be inquired into under Rule 26(b). FED. R. CIV. P. 33(a)(2). Parties seeking discovery may move for an order compelling an answer if a party fails to answer an interrogatory. FED. R. CIV. P. 37(a)(3)(B)(iii). An evasive or incomplete disclosure, answer,

or response is considered a failure to disclose, answer, or respond. FED. R. CIV. P. 37(a)(4). Additionally, an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete or until a pretrial conference or some other time. FED. R. CIV. P. 33(a)(2). Moreover, the grounds for objecting to an interrogatory must be stated with specificity. FED. R. CIV. P. 33(b)(4).

DISCUSSION

## I.    Defendants K&B and Boutwell's Motion to Compel (Doc. 94)

### A.  Tax Records – RFP 5

Defendants note that "[b]ecause Plaintiff asserts a past and future wage loss claim, Defendants' Request for Production 5 seeks Plaintiff's W-2 and income tax returns for the past five years." (*Id*. at p. 2). Pruitt objected that "the burden and intrusion upon Plaintiff's privacy outweighs any benefit Defendant would gain by obtaining complete tax return[s]." (Doc. 94-1, p. 3).

Pruitt responds to Defendants' Motion to Compel by noting:

> [The] parties subsequently met and conferred on March 24, 2021, and pursuant to that discussion, Plaintiff agreed to produce or execute an authorization for the tax returns so long as they were kept confidential pursuant to parties' proposed protective order. Said protective order was entered into on April 2, 2021. [Doc. 26]. Thereafter, on July 14, 2021, Plaintiff provided to Defendants an executed authorization for Defendants to obtain copies of Plaintiff's tax records for the years 2014-2020. If there was any defect with the authorization or issue obtaining the records, Defendants never informed Plaintiff thereof. Indeed, up until the time Defendants filed their Motion to Compel, Plaintiff was under the impression that this matter had long since been resolved. As such, any fault regarding this matter lies

with Defendants and, had Defendants complied with the requirement of Rule 37(a) to attempt to resolve this dispute in good faith before filing their motion, they would have known this.

(Doc. 99, pp. 1-2).

At the meet-and-confer conference on March 24, 2021, Pruitt's counsel agreed to provide the W-2s and income tax returns. (Doc. 103, p. 1). According to Defendants, "[t]here was no discussion of records authorizations." (*Id.*). Defendants' counsel memorialized the meet-and-confer in an email to Pruitt's counsel. (Doc. 103-2, p. 2). In the email, it states "Plaintiff will produce" with respect to Request for Production 5. Pruitt's counsel does not object to the contents of the email. Accordingly, Pruitt is compelled to provide any and all W-2 forms and income tax returns filed by her or on her behalf for the past five years.

B. *Employment Records – RFP 13*

RFP 13 asks Pruitt to provide a number of authorizations including medical records, employment records, workers' compensation records, and cell phone statements. (Doc. 45-2). Pruitt's response to RFP 13 includes the following:

> Plaintiff objects to signing the authorization attached to this request, because it is not reasonably calculated to lead to the discovery of admissible evidence in that it allows access to records of injuries to body parts that are not placed in issue in the pleadings which are protected by patient-physician privilege. It is overbroad as to timeframe in that it is not limited by dates of medical treatment and provides access to remote information from Plaintiff's entire life. Subject to objections and without waiving same, Plaintiff provides limited authorizations for each provider seen for treatment as a result of the incident that is the subject of this case.

(Doc. 94-1, p. 4). Pruitt also asserts that Defendants' Motion to Compel "egregiously" lacks context and "mischaracterize[s] the scope of the authorizations for release of

employment records that Plaintiff provided to them." (Doc. 99, p. 3). Finally, Pruitt argues that Defendants failed to meet and confer before filing their motion to compel.

Even if defense counsel failed to meet and confer regarding RFP 13, "[a]t its discretion the court may waive strict compliance with the conference requirements." *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996) (citations omitted). "It will generally do so when the time for filing another motion to compel has passed and the respondent opposes the motion on its merits and offers no possibility of compromise." *Id.*; *see also Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 724 (D. N.M. 2017) (acknowledging that "[i]n appropriate circumstances, however, the Court may still choose to hear the motion despite the failure to confer as the Court has described that word"). Setting aside this issue and Pruitt's other arguments, Pruitt's response fails to address why she removed from the authorization any records related to: (a) her work-related injuries; (b) employment applications; (c) personnel records; (d) performance reviews; and (e) requests for sick or vacation leave. Even if she did, this information is relevant to Pruitt's alleged injuries and her past and future wage loss claim. Accordingly, Pruitt is compelled to provide an employment records authorization limited to: (a) her work-related injuries; (b) employment applications; (c) personnel records; (d) performance reviews; and (e) requests for sick or vacation leave.

C. *Social Media Evidence – K&B's Supplemental RFP 3*

K&B seeks Pruitt's "social media posts, messages, photographs, and videos concerning Plaintiff's alleged injuries, physical condition before and after the accident (limited to five years), the facts and circumstances of the accident, Plaintiff's mental and

emotional state before and after the accident, and the medications Plaintiff took as a result of the accident." (Doc. 94, p. 4). Pruitt objects that "[t]his request seeks information that is privileged and confidential and is not limited to the scope of the pleading of this case." (Doc. 94-3, p. 2). Pruitt also objects that "[t]his request is overly broad and it is not reasonably calculated to lead to the discovery of admissible evidence." (*Id*. at pp. 2-3).[1]

"[C]ritically, social media content that may reveal information relevant to damages is discoverable under Rule 26." *Doe v. Purdue Univ.*, 2021 WL 2767405, at *8 (N.D. Ind. July 2, 2021) (citation omitted). Accordingly, Pruitt is compelled to provide social media data from her Facebook, Snapchat, and Instagram pages limited to only information relating to the accident, her injuries, or her mental and physical state from the date of the accident forward that relate to her alleged physical injuries or otherwise reflect capabilities that are inconsistent with her allegedly sustained injuries.

### D. Identification Information – Boutwell's Supplemental Interrogatory 2

Supplemental Interrogatory 2 requests Pruitt to "[s]tate the name, address, job title, and employer of the person or persons who came to Plaintiff's home after the accident as referenced in Plaintiff's deposition on page 49, lines 12-19." (Doc. 94-5, p. 3). Pruitt responded "unknown." (*Id*.). Pruitt further explains that "[s]o far as Plaintiff's counsel can ascertain, there was no meeting at Plaintiff's house between her and anyone

---

[1] Pruitt's objections further include an assertion that this information is somehow protected by the Fourth Amendment to the U.S. Constitution and cites the Stored Communications Act, 8 U.S.C. 121 §§ 2701-2712. Pruitt fails to contest, however, that the Fourth Amendment bears no relation to this civil matter. (Doc. 94, p. 5). Pruitt also fails to respond to Defendants' arguments as to the Stored Communications Act. (*Id*.). Accordingly, these objections are overruled.

from Goldblatt + Singer or any expert acting on counsel's behalf." (Doc. 99, p. 7). Pruitt also states that "neither Plaintiff's counsel nor Plaintiff herself know the answer to this question." (*Id.*). Accordingly, the Court denies as moot Defendants' Motion to Compel as to Supplemental Interrogatory 2.

E.  *Retention Formation Information – Boutwell's Supplemental Interrogatory 1*

This interrogatory asks Pruitt to "[s]tate the date, time, and location Plaintiff first contacted or was contacted by Goldblatt & Singer or its agents, including but not limited to, any attorneys or accident investigators." (Doc. 94-5, p. 2). According to Defendant Boutwell, "[t]he date and time Plaintiff first contacted (or was contacted by) Goldblatt & Singer is relevant to several issues, including who came to Plaintiff's home to talk about the accident." (Doc. 94, p. 8). But Pruitt's counsel answered the identification information from Boutwell's Supplemental Interrogatory 2, and the Court fails to see why "[t]his is relevant to identify the individual who came to Plaintiff's home to discuss the accident . . . ." (Doc. 103, p. 4). Accordingly, the Court denies Defendants' Motion to Compel as to Supplemental Interrogatory 1.[2]

---

[2] Even if the Court is incorrect, the Court finds that Defendants have exceeded the Rule 33(a)(1) limit. *See Am. Council of Blind of Metro. Chicago v. City of Chicago*, 2021 WL 5140475, at *1 (N.D. Ill. Nov. 4, 2021) (citations omitted) (noting that "where as here, separate parties are represented by the same counsel and are acting in unison, they may be treated as one 'party' for purposes of the limit on interrogatories"). "Defendants Boutwell and K&B jointly served their interrogatories to Plaintiff; 22 in total." (Doc. 94, p. 9). "K&B, individually, later served three supplemental interrogatories on Plaintiff." (*Id.*). Thus, Defendants served 25 interrogatories. Then Boutwell served an additional three interrogatories bringing the total to 28 interrogatories.

F. *Correspondence Between Pruitt's Counsel and Gateway Spine – K&B's Second Supplemental RFP 3*

This request seeks "[a]ny documents, letters, e-mails, or written correspondence of any type exchanged between Plaintiff's counsel and Gateway Spine & Joint relating to treatment of Kaitlyn Pruitt and/or billing for said treatment." (Doc. 94-6, p. 3). Pruitt responds "[she] objects to this request because it is overly broad, unduly [b]urdensome, disproportionate to the needs of the case and not reasonably calculated to lead to the discovery of admissible evidence." (*Id*.). Nonetheless, Pruitt has no objection to producing the lien.

"First of all, it has to be said that the objections 'vague, overly broad, and unduly burdensome' are the type of unacceptable 'boilerplate' objections that are tantamount to making no objections at all." *Alight Sols. v. Thomson*, 2021 WL 5038775, at *3 (N.D. Ill. Oct. 29, 2021) (citing FED. R. CIV. P. 33(b)(4) ("The grounds for objecting to an Interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.")); *see also Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (finding that district court did not abuse its discretion in deeming facts admitted where the plaintiff "provided only boilerplate objections, such as 'relevance' and 'vague and ambiguous.'"); *Extended Care Clinical v. Scottsdale Ins.*, 2021 WL 2894163, at *2 (N.D. Ill. 2021) (collecting cases).

After filing the boilerplate objections, Pruitt now argues that this request is moot:

On August 1, 2022, Defendants served a subpoena duces tecum and Notice to Take Deposition of the Designated Representative of Gateway Spine & Joint LLC ("Gateway Spine"). Gateway Spine retained counsel and, on August 24, 2022, counsel for Defendants and counsel for Gateway Spine

> reached an agreement regarding the scope of the subpoena and deposition of Gateway Spine's representative. *See* Exhibit 3, Gateway Spine's Motion to Withdraw its Motion for Protective Order, filed in the in the Eastern District of Missouri, Case No. 4:22-mc-00699 ("The parties have resolved the issues raised in Gateway's Motion.").
>
> . . .
>
> In light of the recent document production and deposition of Gateway Spine's representative—which occurred subsequent to Defendants' filing of their Motion to Compel—this issue has been rendered moot and, as such, Plaintiff requests that the Court deny it.

(Doc. 99, p. 9). Nonetheless, Pruitt's boilerplate objections are overruled. Pruitt shall provide any documents, letters, e-mails, or written correspondence of any type exchanged between her counsel and Gateway Spine & Joint relating to treatment of Kaitlyn Pruitt and/or billing for her treatment.

G. *Pruitt's Notes About Accident and Medical Treatment – K&B's Third Supplemental RFP 2*

Defendants' Motion to Compel regarding K&B's Third Supplemental RFP 2 is denied because Defendants violated Rule 37(a) by failing to meet and confer with Pruitt's counsel regarding the journal prior to filing their motion.

## II.   Pruitt's Motion to Compel Directed to K&B (Doc. 96)

A. *Deposing Derek Cleveland*

Under Federal Rule of Civil Procedure 30(b)(1), "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party." FED. R. CIV. P. 30(b)(1). Further, Rule 30(a)(1) provides that "[a] party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2)," and "[t]he deponent's attendance may be compelled by subpoena under Rule 45." FED. R. CIV. P. 30(a)(1). While "Rule 30 does not say so expressly, a subpoena is not

necessary if the person to be examined is a party or an officer, director, or managing agent of a party." 8A FED. PRAC. & PROC. CIV. § 2107. Thus, "[i]f the party is a corporation, it may be noticed pursuant to Federal Rule of Procedure 30(b)(6), in which case the corporation must designate an individual to testify as the corporate representative." *Karakis v. Foreva Jens Inc.*, 2009 WL 113456, at *1 (S.D. Fla. Jan. 19, 2009) (noting that "the party seeking a corporate deposition may identify a specific officer, director, or managing agent to be deposed and notice that individual under Federal Rule of Civil Procedure 30(b)(1)").

"A corporate employee who does not qualify as an officer, director, or managing agent is not subject to deposition by notice." *Id.* "Rather, the employee is treated as any other non-party; before being compelled to testify, he or she must be served with a subpoena pursuant to Federal Rule of Civil Procedure 45." *Id.* "A party need not comply with Rule 45 and issue a subpoena if a non-party will consent to having his deposition taken by notice alone." *Morawski v. Farmers Tex. Cty. Mut. Ins. Co.*, 2014 WL 717170, at *1 (N.D. Tex. Feb. 25, 2014). "Absent such consent, however, *to obtain an order compelling a non-party to appear for a deposition, the party seeking the deposition must not only notice the deposition, but must also properly serve the non-party with a deposition subpoena pursuant to Rule 45.*" *Id.* (internal quotation marks omitted) (emphasis added); *see also McMahon v. Presidential Airways, Inc.,* 2006 WL 5359797, at *1 (M.D. Fla. Jan.18, 2006) ("Although most corporate litigants voluntarily produce subordinate employees, if the corporate party refuses to produce the person, the person must be subpoenaed.").

Cleveland has not been designated as a party, officer, or director. The parties fail to identify whether Cleveland is a corporate officer, director, or managing agent. Pruitt has not provided the notice of the deposition for Cleveland or the documentation that she served Cleveland with a deposition subpoena pursuant to Rule 45. Accordingly, Pruitt's Motion to Compel is denied as to a deposition of Derek Cleveland. *See Jackson v. Stevens Transp., Inc.*, 2015 WL 221087, at *2 (N.D. Tex. Jan. 15, 2015) ("A corporate employee who does not qualify as an officer, director, or managing agent is not subject to deposition by notice. Rather, the employee is treated as any other non-party; before being compelled to testify, he or she must be served with a subpoena."); *see also* WRIGHT & MILLER, 8A FED. PRAC. & PROC. CIV. § 2107 (3d ed.) ("Rule 30(a) provides that the attendance of witnesses at the taking of a deposition may be compelled by subpoena as provided in Rule 45. Though Rule 30 does not say so expressly, a subpoena is not necessary if the person to be examined is a party or an officer, director, or managing agent of a party.").

Besides Rules 30 and 45, Pruitt's lawyers have known for five months that they wanted to depose Derek Cleveland. (Doc. 96-6). That left Pruitt with 45 days until Defendants' deposition cutoff (on August 1, 2022) to file a motion to compel the deposition of Cleveland or seek an extension of the deadline until after confirming Tipton's knowledge. Setting aside the June 17 date, by June 24, 2022, Pruitt's counsel learned that Defendants' counsel sought to limit their deposition exposure to only one full day—with merely one employee. (Doc. 96-8). For these reasons, Pruitt's Motion to Compel is denied as to a deposition of Derek Cleveland.

B. *Critical Event Reporting Data – K&B's Responses to RFPs 13(i), 14(i), and 26(i)*

Pruitt seeks documents covering at least a 30-day period up to and including May 2, 2019. (Doc. 96, p. 6). K&B objected to the 30-day period. As a result, the parties met and conferred on September 20, 2021. "At parties' meet and confer discussion on September 20, 2021, *it was agreed* that K&B would, inter alia, provide supplemental document production covering at least the eight (8) day period prior to and including May 2, 2019, for each of RFP Nos. 13(i), 14(i) and 26(i)." (Doc. 96, p. 8) (emphasis added).

Indeed, Defendants' counsel frames what happened at the meet-and-confer as reaching an agreement with Pruitt's counsel. But Pruitt's counsel contests that:

> Plaintiff's position was, is, and has always been that eight days is an insufficiently narrow timeframe for Plaintiff to gain the necessary understanding of K&B's ordinary practices, and such an understanding is a prerequisite to identifying events and information that deviate from that "ordinary" baseline. Thus, Plaintiff's counsel insisted that "[f]or all limitations agreed upon as the 8 days prior [to] and including the day of the crash, *Plaintiff reserves the right to take up [Defendant's] objections to providing the full time period requested*."

(*Id*.) (emphasis added). Defendants' counsel argues that reserving the right to take up a party's objection is not conferring in good faith, but is a bait-and-switch tactic. (Doc. 104, p. 3).

The parties did not come to an agreement. "During the meet-and-confer, K&B agreed to produce eight days of critical event data." (Doc. 104, p. 1). Unilaterally limiting the documents to only the eight days prior to and including the day of the crash is not reaching an agreement. The undersigned rejects this argument.

K&B's remaining objections are overruled. K&B shall fully respond, and also provide what constitutes a "critical event" sufficient to trigger the on-board device to generate an alert as determined by the system settings.

C.  *K&B's Response to RFP 26*

RFP 26 requests K&B to provide "[d]ocuments of or pertaining to Driver's job performance as the driver of a commercial motor vehicle during his employment with Defendant, including the following: log audits; documents regarding drug and alcohol testing; disciplinary action; performance evaluations; complaints/motorist call-ins; near-misses; violations, citations, and warnings; driver scorecards; preventability determinations or incident review board reviews of crashes involving Driver other than the crash that is the subject of this case; and other documents used by Defendant to supervise Driver's job performance." (Doc. 96-1, pp. 9-10). K&B objects to RFP 26 arguing that it is "irrelevant, not likely to lead to the discovery of admissible evidence, and are premature pending a ruling on Defendant's Motion to Dismiss and/or Strike." (*Id.* at p. 10). K&B also objects stating the following:

> They are also unanswerably vague as to "documents of or pertaining to…" and "[o]ther documents used by Defendant…". They are further overbroad, as they are not subject to any reasonable temporal or subject matter limitations. Additionally, the Request in subparagraph (j) seeks information protected by the attorney-client privilege, insurer-insured privilege, and work-product doctrine.

(*Id.*).

Again, vague and overbroad are boilerplate objections—and are overruled. The unilateral agreement to only produce documents limited to the eight days before the

accident will not be enforced. K&B is ordered to fully respond subparts (a), (b), (c), (d), (e), (g), and (k). Such responses will cover at least the 30-day period prior to and including the date of the collision on May 2, 2019.

As for subpart (f), however, the Court agrees that "near-miss" is vague. The Court cannot tell if Pruitt wants records of actual accidents or close calls—or both—covering the 30-day period prior to and including the date of the collision on May 2, 2019. Pruitt shall clarify and resubmit to K&B, who shall have seven days to respond.

As for subpart (h), the Court agrees that "[o]nly scorecards obtained before the accident would be relevant to [Pruitt's] claim that K&B should not have hired Boutwell, or should not have retained or entrusted a vehicle to him, and thereby caused the accident." (Doc. 104, p. 5). K&B is ordered to respond to subpart (h) by providing the scorecards that K&B obtained before the accident.

For subpart (j), K&B objects on the grounds that it is irrelevant and violates 49 U.S.C. § 504(f). There is a difference between incident reports made by the Secretary of Transportation, reports made by K&B required by the Secretary, and documents made by K&B to fill in the blanks on a required report. The third type of documents—those documents used to fill in the blanks on a DOT report or "used to generate the DOT Official Accident Register Reports"—do not fall within 49 U.S.C. § 504(f). *See e.g.*, *Sajda v. Brewton*, 265 F.R.D. 334, 341 (N.D. Ind. 2009) ("[Section 504(f)] does not extend to regularly-gathered information that the carrier acquires and uses to fill in the blanks on [a] DOT report."). K&B is ordered to produce all preventability determinations or incident review board reviews of crashes involving Boutwell other than the crash that is

the subject of this case. The Court will further limit K&B's response to only those determinations or incident review board reviews of crashes involving the Boutwell that occurred before May 2, 2019.

**III.    Pruitt's Motion to Compel Directed to Boutwell (Doc. 97)**

*A.  Interrogatory No. 12*

On January 13, 2021, Pruitt served her First Interrogatories on Defendant Boutwell. (Doc. 97, p. 1). Interrogatory 12 requests Boutwell to "state whether you had a cellular phone in the vehicle at the time of the collision reference in Plaintiff's Complaint, and if so, please state the service provider of each cellular phone, the telephone number of each cellular phone and the name of the account holder(s) for each phone." (Doc. 97-1, p. 4). On April 7, 2021, Defendant Boutwell provided boilerplate objections to this interrogatory, and answered "[s]ubject to and without waiving said objections, Defendant had a cell phone in the cab but was not using it." (*Id.*).

Defendant Boutwell's objections to Interrogatory 12 are overruled. Besides Boutwell's boilerplate objections, Boutwell's assertion that this Interrogatory is "harassing and seeks the confidential, personal information of this Defendant[,]" (Doc. 97-1, p. 4), is neither elaborated on nor does Boutwell provide law that supports the notion that he does not need to answer. Boutwell shall fully answer.

*B.  Pruitt's Second Request for Production of Documents*

This request asks Boutwell to provide:

All documents that evidence or indicate cellular phone calls, text messages, picture messages, or other cellular phone activity made by or received by this Defendant on the day of the subject crash, in the thirty (30) days prior

to and twenty-four (24) hours following the subject crash, including but not limited to, phone bills, statements, logs and any other documents, materials or records that indicate cellular phone use or activity. If this documentation is unavailable to this Defendant, and this Defendant is the account holder for a cellular phone in this Defendant's possession on the date of the subject crash, please execute the attached Cellular Phone Authorization, filling in the service provider and subject telephone number.

(Doc. 105-6, p. 1). Boutwell objects to this RFP arguing the following:

> Defendant objects that this Request explicitly violates the parties' prior good faith agreement, reached on September 20, 2021, whereby Plaintiff agreed to accept a cell phone records authorization limited to the day of the accident. Defendant further objects that Plaintiff did not serve this Second Request for Production on all defense counsel of record. Further, Defendant objects that this Request is duplicative of *Plaintiff's initial Request for Production No. 19* to Defendant Boutwell, which sought Boutwell's cell phone records from two hours before and 24 hours after the accident. Defendant also objects that this Request is overbroad in time and scope and thereby seeks irrelevant information, and that it seeks the personal, confidential, and financial information of persons who are not parties to this litigation.

(Doc. 97-9, pp. 1-2) (emphasis added).

RFP 19—which was served on January 13, 2021—is not duplicative. RFP 19 requests Boutwell to produce:

> All documents that evidence or indicate cellular phone calls, text messages, picture messages, or other cellular phone activity made by or received by this Defendant on the day of the subject crash, in the two (2) hours prior to and 24 hours following the subject crash, including but not limited to, phone bills, statements, logs and any other documents, materials or records that indicate cellular phone use or activity. If this documentation is unavailable to this Defendant, and this Defendant is the account holder for a cellular phone in this Defendant's possession on the date of the subject crash, please execute the attached Cellular Phone Authorization, filling in the service provider and subject telephone number.

(Doc. 97-2, p. 6). Boutwell objected to RFP 19. As a result, the parties met, conferred, and agreed that "Defendant Boutwell will produce a cell phone auth limited to the date of the

crash [and] Plaintiff will provide a new authorization with the one-day limitation." (Doc 97-3, p. 1). The meet-and-confer did not resolve Pruitt's Second Request for Production of Documents.

Boutwell also argues that "Plaintiff improperly served her Second Request for Production because she sent it to only one of Boutwell's two attorneys." (Doc. 105, p. 7). The problem is Boutwell has served an objection in response to Pruitt's Second Request for Production of Documents. Accordingly, this objection is overruled.

Boutwell's objections as to overbroad in time and scope, "and thereby seeks irrelevant information" are sustained. Courts have "consistently held that cell phone records of a defendant around the time of the accident are relevant to whether the defendant was at fault for causing an automobile accident and thus discoverable despite the defendant's privacy interests." *Moorhead v. Klene*, 2019 WL 4261125, at *2-3 (W.D. Tex. Sept. 9, 2019) (limiting production to "Defendant's cell phone records reflecting incoming and outgoing telephone calls and text messages for the period of thirty minutes before and thirty minutes after the collision at issue"). Yet the timeframe of 30 days prior to and 24 hours following the subject crash is too broad. *See e.g., Waters v. R and D Trucking, LLC*, 2020 WL 12948069, at *3 (S.D. Ala. Apr. 21, 2020) (finding that "a reasonable, proportionate, and relevant time period for production of cell phone records to be limited to a time period of twenty-four (24) hours prior to the accident and two (2) hours after the accident"); *Kizer v. Starr Indem. & Liab. Co.*, 2019 WL 2017556, at *3 (W.D. Okla. May 6, 2019) (finding that the time frame for defendant's cell phone records were too broad

and modifying "the subpoena to require production of cell phone records for the twenty-four (24) hours prior to the accident and two hours after the accident").

## CONCLUSION

For the reasons stated above, the Motion to Compel filed by Defendants is **GRANTED in part** and **DENIED in part**. (Doc. 94). Pruitt shall respond based on the Court's instructions stated above within **14 days** of this order.

Pruitt's Motion to Compel Directed to K&B is **GRANTED in part** and **DENIED in part**. (Doc. 96). K&B shall respond based on the Court's instructions stated above within **14 days** of this order. Additionally, Pruitt's Motion to Compel Directed to Boutwell is **GRANTED in part** and **DENIED in part**. (Doc. 97). Boutwell shall respond based on the Court's instructions stated above within **14 days** of this order.

**IT IS SO ORDERED.**

**DATED:  November 18, 2022**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**